**KELLY TIRE SERVICE, INC., Now Known as D and D Tire Company, Inc., Dan's Realty, Inc., and Dr. Dan Toriello, Appellants,**

v.

**The KELLY–SPRINGFIELD TIRE COMPANY, Appellee.**

**No. 17448.**

United States Court of Appeals Eighth Circuit.

Nov. 16, 1964.

Max Putnam, of Putnam, Putnam & Putnam, Des Moines, Iowa, for appellants.

Sherwin J. Markman, of Brody, Parker, Roberts, Thoma & Harris, Des Moines, Iowa, Donald J. Brown, Des Moines, Iowa, for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Plaintiffs, Kelly Tire Service, Inc., Dan's Realty, Inc. and Dr. Dan Toriello, brought suit against defendant, The Kelly-Springfield Tire Company, for damages sounding in tort and contract. Dr. Toriello owned Dan's Realty, Inc. and was the principal promoter and stockholder of Kelly Tire Service, Inc. The

plaintiffs jointly will sometimes be referred to here as plaintiff.

Jurisdiction exists by reason of diversity of citizenship and the required statutory amount in controversy.

Plaintiff's complaint in essence alleged that (1) the defendant breached a distributor sales agreement executed by the parties on July 22, 1960 and (2) defendant committed a fraud upon plaintiff by intentionally misrepresenting its promises under the aforementioned contract which induced plaintiff to enter the retail tire business and caused the resultant losses.

The defendant denied generally the averments of the complaint and counterclaimed for recovery of an alleged $51,-708.78 indebtedness represented by a stipulated unpaid open account totaling $50,608.78 for merchandise sold plaintiff and an unpaid $1,100.00 balance on a promissory note. The defendant further alleged that the entire indebtedness was secured by Dr. Toriello's individual written guaranty for the debts of Kelly Tire Service, Inc.

At the close of the evidence, the District Court directed a verdict for the defendant on the issue of fraud holding that the record was devoid of any evidence of intentional misstatement or concealment of any material fact.

The District Court likewise directed a verdict for defendant on the issue of breach of the franchise agreement during the period from its execution until January 1, 1961, ostensibly on grounds that it was during this period one Kelly Evans was a co-owner and manager of Kelly Tire Service, Inc., and was shown by the evidence to have been solely responsible for the business' losses.

The District Court further directed a verdict for defendant on all counts of its cross action. Simultaneously, the District Court overruled plaintiff's corresponding motion for directed verdict in opposition to defendant's counterclaims on grounds the evidence or lack thereof indicated as a matter of law the inapplicability of plaintiff's affirmative defenses of estoppel by acquiescence, consent, waiver, fraud or failure of consideration.

The District Court submitted to the jury in the form of a special verdict the factual issues of the existence of an oral contract between the parties subsequent to January 1, 1961, and defendant's alleged breach thereof. The jury found that the parties entered into a binding oral agreement after January 1, 1961, but that neither party was guilty of any breach. Plaintiff, therefore, was not entitled to any recovery to be set off against defendant's judgment on its counterclaim. Plaintiff asserts error on the part of the District Court in dismissing its action for fraud and failing to submit to the jury the affirmative defenses directed against a recovery on defendant's counterclaims.

We summarize the salient facts. In 1959 Dr. Dan Toriello was influenced by an acquaintance, one Kelly Evans, then a store manager in Des Moines for the General Tire and Rubber Company, to negotiate with the General Company for a lease of some of the doctor's commercial property for a retail tire and service business. Before an agreement was consummated with the General Company, Dr. Toriello instituted extensive remodeling of his property according to plans furnished him by the General Company for the single purpose of housing a tire business. After the construction had substantially progressed to a point where it would have been as inexpensive to complete the renovation as to undo the alterations, Dr. Toriello learned that the General Company would not enter into the proposed lease agreement. Dr. Toriello then temporarily halted remodeling whereupon Evans introduced him to representatives of the defendant to determine if it was interested in leasing the premises for a retail outlet.

In May of 1960, meetings between Dr. Toriello, Evans and representatives of defendant were held in Des Moines. The defendant's representatives explained that its company was not interested in leasing the building as it was not its policy to own dealer stores; but defend-

ant would consider granting a distributorship or franchise to plaintiff. It was suggested that the doctor and his co-venturer, Evans, form a separate corporation for this purpose and lease the property from the doctor's real estate company. The parties tentatively agreed that Dr. Toriello and Evans would incorporate under the name of Kelly Evans Tire Company with a paid-in capital of $20,000.00 in cash and that Evans, who had previously been discharged by General, would manage the business. In return, the defendant promised to supply plaintiff with a consignment of tires without interest, a line of credit, account sales assistance, bookkeeping and credit supervision, and aid in the advertising program.

Thereafter, Evans and Dr. Toriello continued to consult with defendant's midwestern divisional sales manager and credit manager as to the details of the agreement. Evans estimated that with his experience and captive business in the Des Moines area he could attain an unusually high level of gross sales during the first year of operation. The defendant made a first year projection of plaintiff's anticipated sales, expenses and profits but used in the formula a reduced estimate of sales from the figure suggested by Evans, which the latter objected to as being low. More than one projection was made, but subsequently at a meeting in mid June, attended by Evans, Dr. Toriello and officials of the defendant, a projection was finalized and explained in detail to the doctor. He was informed that the annual sales estimate had again been reduced to provide a more realistic, anticipated picture of the possibilities the business could achieve. It was the understanding of all that the business should be inaugurated with a cash capital of $20,000.00. Based on this capitalization and the execution of personal guaranties by Dr. Toriello and Evans, the defendant's representatives recommended to their home office that a franchise be granted and plaintiff furnished with an $18,000.00 consignment, an $18,-000.00 line of credit, a $2,500.00 loan

for equipment needs, advertising assistance, plus aid in establishing the financial books of the company.

In early July, Evans and Dr. Toriello co-signed a note for $10,000.00 borrowed from a Des Moines bank. This sum constituted the sole contribution to capital. Evans had assured Toriello that he would obtain and deposit the additional $10,-000.00 to capital but unbeknown to Dr. Toriello, Evans did not make the additional deposit. The defendant was likewise misled as it was mistakenly assured by the bank, through oversight, that plaintiff had deposited $20,000.00 into the business. This occurred prior to defendant's confirmation of the franchise agreement. When business was commenced by the corporation, Evans erroneously noted on the check book a balance of $20,-000.00 to the corporate account when, in fact, only the original $10,000.00 was on deposit.

Shortly before execution of the franchise, the plaintiff started business with Evans in charge. Dr. Toriello had left on a European trip and did not return until the middle of September. Evans, who had not made the contribution to capital as he had led his associate and the defendant to believe, immediately incurred excessive expenses far beyond the projection's estimate. Examples of such excessive expenditures were spending fifteen per cent of the total invested capital for the purchase of business stationery alone, while paying himself a monthly salary of $1,000.00. Upon learning of these and other inordinate expenses, the defendant became alarmed and repeatedly warned Evans during August and September that he must curtail expenses in order to remain solvent.

After Dr. Toriello had returned from Europe in mid September, defendant advised him of the precarious financial status of his business as well as Evans' dereliction as manager. In December, Toriello and defendant learned of Evans' concealment of the corporation's undercapitalization to the extent of $10,000.00 which convinced Toriello that Evans should be replaced. Dr. Toriello consid-

ered bankruptcy, but acting upon the advice of his banker and attorney, decided to invest additional capital in the business, meanwhile obtaining Evans' complete disassociation from the corporation. He sought defendant's cooperation and assistance. The defendant promised to furnish an interim manager at its own expense until such time as Toriello could obtain a replacement.

It was at this juncture that defendant prepared a new projection based on the added capital reflecting the revised expected profits at the end of the first year. Dr. Toriello was also promised continued advertising, sales and bookkeeping assistance as well as the existing tire consignment, line of credit, cash rebate at the year end and the likelihood of using his facilities as a training center for some of defendant's personnel. On January 31, 1961, Dr. Toriello invested an additional $15,000.00 and the corporation, renamed Kelly Tire Service, Inc., continued in business.

On the basis of a subsequent audit of the business, the defendant modified the new projection and recommended that the plaintiff contribute $25,000.00 to additional capital. Dr. Toriello offered to invest an additional $10,000.00 provided the defendant would loan the business $17,000.00. Defendant declined the proposal, but Dr. Toriello contributed another $10,000.00 to capital nevertheless. Thereafter, an officer of the defendant company informed Toriello that defendant would not invest any more money in the corporation and that it would be inadvisable for him to put any more money in the business as well. Dr. Toriello advised defendant that unless the business was granted further financial assistance, he would have to obtain another supplier. As a result of this meeting, defendant obtained one short term note from Dr. Toriello towards a plan for payment of the account's monthly unpaid balance, but Dr. Toriello later discontinued execution of any more of these notes.

Plaintiff and defendant's working relationship deteriorated from this time forward as plaintiff's open account indebtedness mounted and the defendant repeated its demands for payment. Ultimately, on February 1, 1962, after a final analysis of the overdue account by one of its accountants, defendant decided to withdraw its consignment which plaintiff had continuously drawn upon without payment, discontinue the services of its manager who had been serving plaintiff at defendant's expense and demand payment in full. Plaintiff refused to pay and served defendant with notice of this lawsuit.

■ Under the law of Iowa which controls the substantive issues of the instant appeal, the plaintiff was burdened with proof of the following essential elements to support as a matter of law the allegations of its action based on fraud: (1) The defendant made a false representation of a material fact. (2) The defendant knew the representation was false when made or implied the truth of an unqualified representation of fact unknown to be true or not. (3) The representation was made with an intent to deceive. (4) Plaintiff relied on the false representation. (5) This reliance caused plaintiff damage. LaMasters v. Springer, 251 Iowa 69, 99 N.W.2d 300 (1959); Reinertson v. Consolidated Chemical Products Co., 205 Iowa 417, 216 N.W. 68 (1927).

■■ Fraud is never presumed. To the contrary, the facts constituting fraud must be established by a preponderance of the evidence that is clear, satisfactory, and convincing to overcome the presumption of usual fair dealing between parties to a transaction. Wyckoff v. A & J Home Benevolent Ass'n. of Creston, 254 Iowa 653, 119 N.W.2d 126 (1962); Johanik v. Des Moines Drug Co., 240 Iowa 310, 36 N.W.2d 370 (1949).

The crux of plaintiff's claim of fraud is that in return for his promise to complete the remodeling of his property to accommodate a tire business, form a corporation for this purpose with Kelly Evans as manager, invest $20,000.00 in capital and sign a personal guaranty, defendant promised to enter into a franchise agreement, provide an adequate

supply of tires, lend additional aid and assistance, and assure a projected volume of sales, gross and net profits. Plaintiff contends that at the time of making these promises and assurances, defendant misrepresented its "intents and purposes" by concealing its motive of never intending to perform its obligations which were allegedly made solely to induce plaintiff to execute the franchise and guaranty. In like manner, plaintiff argued that it was again defrauded when, in December of 1960 and thereafter, in order to get from plaintiff an additional contribution to capital, defendant promised a continued tire supply, a revised picture of annual sales and profits under management furnished by it, as well as additional personnel, credit arrangements, cash contributions, collection of accounts receivable, and an adequate advertising program.

The main defense of The Kelly-Springfield Tire Company is that it fully performed in good faith all promises of aid and assistance on which plaintiff relied. The evidence is uncontroverted that defendant: (1) instructed plaintiff's bookkeeper in setting up the books of the corporation and inspected them periodically; (2) through its field representatives repeatedly advised manager Kelly Evans during his tenure how to curtail expenses and continued this advisory supervision of the account until the franchise was ultimately cancelled; (3) granted the business promotional and identification advertising assistance in the amount of some $3,400.00; (4) assigned a salaried employee to manage plaintiff's business and collect accounts receivable from January, 1961 through February, 1962; (5) rebated to the business total credits exceeding $5,000.00 on all tire purchases; (6) awarded sales bonuses to the account in the sum of $3,330.00; and (7) provided manpower sales assistance by contributing towards the salary of a full time salesman.

■■ With respect to the representations contained in the projections, the evidence does not demonstrate that defendant had any knowledge when these annual forecasts of plaintiff's business were prepared and presented to it that the estimated levels of sales and profits could not be attained. Nor is there any evidence to support the allegation that defendant harbored a secret intention or purpose not to strive for their fulfillment. Despite Dr. Toriello's insistence that the projections coupled with the experience of defendant's organization convinced him that his business venture was absolutely risk free, there is no question but that defendant's representatives advised Dr. Toriello that the figures reflected in the projections were expected or predicted goals—not ironclad guarantees. At best, these projections, however persuasive in shaping plaintiff's plans, were opinions subject to the uncontrollable economic influences of free enterprise and not fraudulent misrepresentations of past or existing facts on which plaintiff justifiably relied to its detriment. First Acceptance Corp. v. Kennedy, 194 F.2d 819 (8th Cir. 1952).

■ We have diligently searched the transcript of evidence and have found no support for the charge that defendant made false representations to plaintiff in any instance for the purpose of and with the intent to defraud. Therefore, we need not test the evidence against the remaining elements necessary to show fraud, since in the absence of proof of any scienter on defendant's part, the issue of fraud was properly withheld from the consideration of the jury. Benson v. Chase Grain Storage Co., 246 Iowa 591, 67 N.W.2d 433 (1955); Appleby v. Kurtz, 212 Iowa 657, 237 N.W. 312 (1931).

The argument of plaintiff against liability on defendant's counterclaim for the open account, promissory note, and securing guaranty is that the District Court erred in directing a verdict for defendant because plaintiff pleaded and established by substantial evidence certain affirmative defenses which should have been submitted to the jury for consideration.

■ Plaintiff contends that defendant by its conduct forfeited enforcement

of its contractual rights by virtue of the long standing, equitable principles of *volenti non fit injuria* (consent to injury), waiver, acquiescence, and promissory estoppel. All of these concepts find their origin generally in the equitable notion that one may not change his position and profit from his own wrongdoing when he has caused another to suffer a detriment by relying on his former promises or representations. Cf. Ames Trust & Savings Bank v. Reichardt, 254 Iowa 1272, 121 N.W.2d 200 (1963); State v. Raymond, 254 Iowa 828, 119 N.W.2d 135 (1963); Perkins v. City National Bank of Clinton, 253 Iowa 922, 114 N.W.2d 45 (1962); Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A.L.R. 2d 1058 (1954).

■ Without elucidating the requisites and distinctions among the respective defenses, we concur in the District Court's decision withholding these issues from the jury's consideration because of an absence of evidentiary support. Our study of the transcript of evidence including a painstaking examination of the voluminous exhibits convinces us that defendant is not chargeable with any wrongdoing in the performance of its obligations arising from the franchise agreement and collateral oral promises for which plaintiff deserved equitable relief. Individual disposition of each and every point of plaintiff's arguments through extensive review of the evidence would serve no useful purpose and unduly lengthen our opinion. We reiterate that the record contains no evidence which would have justified the jury in concluding that defendant by its acts or statements waived payment, consented or acquiesced in the nonpayment of plaintiff's indebtedness, or in any other manner gave cause to be estopped from asserting its claims. Therefore, the District Court did not err in directing a verdict for defendant's undisputed amount of its counterclaims having first determined the aforementioned affirmative defenses including fraud and failure of consideration to be wholly lacking in evidentiary support and thereby unworthy of jury consideration. See Anfenson v. Banks, 180 Iowa 1066, 163 N.W. 608, 625, L.R.A.1918D, 482 (1917).

The judgment appealed from is affirmed.