MARSHALL, Appellant, v. MILES, Respondent.

*No. 214. Argued February 1, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 630.)

For the appellant there was a brief by *Sheridan, Sheridan & Mellick, Ltd.,* of Waukon, Iowa, and by *Bosshard, Sundet & Nix* of La Crosse, and oral argument by *James U. Mellick* of Waukon, Iowa, and *Richard A. Hollern* of Madison.

For the respondent there was a brief by *Steele, Smyth, Klos & Flynn* and *R. W. Schroeder,* all of La Crosse, and oral argument by *Mr. Schroeder.*

CONNOR T. HANSEN, J. The complaint alleged that at the request of the defendant, plaintiff engaged in measuring the roof of defendant's house for the purpose of estimating the number of shingles necessary for replacement. While on the roof, plaintiff slipped and fell to the ground. Plaintiff alleged the fall was proximately caused by the negligence of the defendant. Defendant answered, denying each of the material allegations in the complaint and, as an affirmative defense, claimed the accident was caused by the plaintiff's own negligence.

Defendant's affidavit in support of the motion for summary judgment stated that although nothing was said concerning compensation to the plaintiff for measuring the roof, he assumed an agreement would be reached at a later time. Defendant was unaware of any defect that would make the roof hazardous to walk on although he never made any personal inspection of the roof for that purpose. He never made any statement or representation to the plaintiff about the condition of the

roof. He stated that when plaintiff stepped off the ladder and out of his view, he had one foot on the first rung and was in the process of ascending the ladder himself. Before he could take another step, plaintiff slid into the top of the ladder, knocking it away from the roof. The top of the ladder swung back and plaintiff then fell to the ground between the side of the house and the ladder. Defendant further stated that at no time did plaintiff tell him to hold the ladder as a barrier, nor did he make any exclamation when he slipped and fell.

The adverse examination of the plaintiff reveals that he had measured roofs for other persons for compensation on at least three previous occasions but it was his belief that he was doing the work for the defendant as a favor. On the day of the accident, plaintiff did not intend to measure the roof of defendant's house because it had been raining at his home some two miles away. He, therefore, changed from his work clothes to his street clothes and called the defendant to tell him that he was not coming over. Defendant stated that it was not raining at his house and plaintiff then agreed to come over and do the work. He stated that the defendant did not make any representation to him about the condition of the roof other than stating that his house needed roofing. Upon arriving at the defendant's home, plaintiff examined the ladder furnished by the defendant and judged it to be satisfactory. As he started up the ladder he turned to the defendant and told him to hang onto the ladder, which the defendant did. Upon reaching the top, he wiped his hand across the surface of the roof to determine whether or not it was dry; he did not check to see if the granules in the asphalt shingles were loose. He then got off the ladder and put both feet on the roof. As he took a step with his right foot the granules gave way under his left foot and

caused him to slip and fall. He slid down the roof on his stomach in a "spread-eagle" position with his hands in front of him, grabbing for the roof. He also stated that he was trying to grab the ladder while he was sliding. At no time did he cry out or give any warning. He stated that when he hit the ladder it ". . . gave back a ways and then I could feel Mr. Miles batting at me with his ladder, . . . and that held my feet from coming down between the ladder and the house and it consequently turned me over on my back and that's where I fell, flat on my back." Plaintiff could not actually see the defendant at this time. He further stated that he did not explain to the defendant why he wanted him to hold the ladder but he stated that part of the reason for directing the defendant to hold the ladder was to steady it as he was ascending; the other part of the reason was that "it is nice to know that there is somebody there holding the ladder," although plaintiff stated he was not expecting to slip and fall on the roof.

In opposition to the motion for summary judgment, plaintiff, by his attorney, submitted an adverse examination of the defendant along with portions of his own adverse examination. The defendant stated that the roof on his house did not have a very steep pitch. He also stated that the plaintiff did not tell him to hold the ladder although the defendant did so until the plaintiff got off the ladder and onto the roof. Defendant then started up the ladder himself. He further stated that the ladder could not have acted as a barrier unless it was known that the plaintiff was about to slide into it.

Plaintiff also submitted the affidavit of his attorney who stated that from his (the attorney's) notes and recollection, the defendant admitted, in a conversation in the attorney's office, that the plaintiff requested him

to hold the ladder and that he did so for a short time but then started to climb the ladder himself.

### *Issue.*

The issue presented on this appeal is whether the trial court erred in granting defendant's motion for summary judgment.

The rules relating to the use of summary-judgment procedure are well established and they have been set forth and explained by this court many times.

Summary judgment is a drastic remedy that should not be granted where material evidentiary facts are in dispute, or, where reasonable inferences can be drawn from undisputed facts that would lead to alternative and opposite results. *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191; *Balcom v. Royal Ins. Co.* (1968), 40 Wis. 2d 351, 161 N. W. 2d 918; *Schandelmeier v. Brown* (1968), 37 Wis. 2d 656, 155 N. W. 2d 659. The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 188 N. W. 2d 507. However, the allegations of the pleadings may not be considered as evidence or other proof on a disposition of the motion. *Milwaukee County v. Schmidt* (1968), 38 Wis. 2d 131, 156 N. W. 2d 493; *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 142 N. W. 2d 787. Assuming a cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. *Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 150 N. W. 2d 460. If the moving party has made a prima facie case for summary judgment, an examina-

tion is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 141 N. W. 2d 909. The summary-judgment procedure is not a trial on affidavits. *Jahns v. Milwaukee Mut. Ins. Co.* (1968), 37 Wis. 2d 524, 530, 155 N. W. 2d 674:

". . . A party opposing summary judgment defeats the motion if he shows by affidavits, or other proof, that there are substantial issues of fact or reasonable inferences which can be drawn from the evidence. The court does not try the issues but decides on summary judgment whether there is a substantial issue to be tried. . . ."

The complainant alleged the accident was proximately caused by the negligence of the defendant in the following respects:

(1) Failure to provide a proper ladder;

(2) Failure to warn the plaintiff of defects on the roof; and

(3) Failure to hold the ladder after promising to do so.

*Failure to provide a proper ladder.*

Under any theory of negligence, this allegation is disposed of by the plaintiff's statement that he examined the ladder personally and judged it to be satisfactory. The only claim made by the plaintiff in regard to the ladder was that if it had been longer "it wouldn't have hurt," and if it had been properly held there would have been no problem in climbing it. These claims have nothing to do with causing the accident. The record

is devoid of any evidence which might establish that the ladder was inherently defective.

*Failure to warn of defects on the roof.*

It is a disputed fact whether the plaintiff was to receive compensation. A different legal relationship would exist between the plaintiff and the defendant depending upon whether the act was being performed for compensation or as a gratuitous favor. However, the resolution of this issue is not required for the disposition of this case. It is undisputed that the plaintiff knew that defendant wanted to replace the roof; that the plaintiff had had previous experience in measuring roofs in order to estimate the number of shingles necessary for replacement; and, that the plaintiff wiped his hand across the surface of the roof before stepping off the ladder and onto the roof. Under the circumstances, the possibility of danger or the defect complained of was, or should have been, obvious. If the legal relationship between the defendant and the plaintiff was that of master and servant, defendant would be under a duty to warn the plaintiff of dangers of which the defendant had knowledge or should have discovered in the exercise of reasonable care unless the danger was, or should have been obvious to the plaintiff. *Szep v. Robinson* (1963), 20 Wis. 2d 284, 121 N. W. 2d 753. If the legal relationship between the defendant and the plaintiff was that of invitor-invitee, as the trial court held, the defendant was under a duty to use reasonable care in discovering such dangerous condition and, notwithstanding the obvious or apparent nature thereof, may have been under a duty to warn the plaintiff. *Voeltzke v. Kenosha Memorial Hospital* (1969), 45 Wis. 2d 271, 172 N. W. 2d 673; Prosser, *Law of Torts* (3d ed.), pp. 403, 404, sec. 61. The defendant had no actual knowledge of any defects in his roof, and specifically had no knowledge that the

asphalt shingles were not intact. Under the facts of this case, the defendant had no duty to inspect his roof and warn the plaintiff of any possible defects therein.

*Failure to hold the ladder after promising to do so.*

On adverse examination, the plaintiff stated that as he started up the ladder he turned to the defendant and told him to hold the ladder, which the defendant did. Defendant, however, disputed the fact that he was told by the plaintiff to hold the ladder. In support of his position, an associate of the plaintiff's attorney filed an affidavit which declared that the defendant admitted he was told by the plaintiff to hold the ladder. The trial court properly admonished the plaintiff's counsel as to the propriety of the use of such an affidavit. *Lorenz v. Wolff* (1970), 45 Wis. 2d 407, 419–423, 173 N. W. 2d 129. The trial court also correctly ruled as improper that part of the plaintiff's evidence which consisted of excerpts from his own adverse examination. Such evidence constitutes a self-serving declaration and is inadmissible on a motion for summary judgment. *Thompson v. Dairyland Mut. Ins. Co.* (1966), 30 Wis. 2d 187, 190, 140 N. W. 2d 200. Nevertheless, the court accepted as true, the fact that plaintiff had told the defendant to hold the ladder.

It is undisputed that when the plaintiff was on the roof and out of the view of the defendant, the defendant began to ascend the ladder himself. When the plaintiff fell, the defendant had one foot on the bottom rung and his hands at the side of the ladder. Defendant stated that the ladder could have served as a barrier only if it were known that the plaintiff was about to slide into it. It is undisputed that at no time did the plaintiff warn the defendant that he was falling. The record reveals that the length of the ladder was 11–12

feet and the eaves of the house were approximately eight feet from the ground. The ladder was placed against the house at an angle and extended over the eaves of the house less than one foot. Thus, the physical facts would support the view that the ladder might have served as a barrier. However, that is not the issue which must be decided. The question is whether a trier of fact could reasonably conclude that the defendant was under a continuing duty to hold the ladder after the plaintiff passed out of the defendant's view? We think not. The only reasonable conclusion to be drawn is that the defendant was under a duty to hold the ladder only for the period of time the plaintiff was ascending and descending the ladder. Here, the parties obviously contemplated that the plaintiff would be on the roof for some period of time and would not always be in a direct line with the ladder. Furthermore, plaintiff has made no claim that one of the purposes in requesting the defendant to hold the ladder was to provide a barrier in the event he were to fall.

From the foregoing, we are of the opinion that the trial court was correct in ruling that the defendant breached no legal duty toward the plaintiff and, therefore, an appropriate situation has been presented for the use of the summary-judgment procedure.

The trial court, in addition to finding no duty on the part of the defendant, held that even assuming the defendant was negligent, as a matter of law the negligence of the plaintiff would be equal to or greater than that of the defendant. We deem it unnecessary to consider this issue.

*By the Court.*—Judgment affirmed.