HOWARD, Plaintiff-Appellant, v. VILLAGE OF ELM GROVE, and others, Defendants-Respondents.

*No. 75–630. Submitted on briefs September 6, 1977.—*
*Decided October 4, 1977.*
(Also reported in 257 N. W. 2d 850.)

For the appellant the cause was submitted on the briefs of *James G. Howard* and *Binder, Zirbel & Howard* of Milwaukee.

For the respondents the cause was submitted on the brief of *H. J. Sanville* of Elm Grove.

HANLEY, J.   The sole issue to be determined on this appeal is whether, by reason of disputed facts or inconsistent inferences raised in the affidavits of the parties, the plaintiff was entitled to a trial on the merits.

It is well established that summary judgment is a drastic remedy which should be used only when there are no substantial issues of fact to be tried and when there are no permissible inferences from undisputed facts that would permit a different result. *Federal Deposit Insurance Corp. v. First Mortgage Investors*, 76 Wis.2d 151, 153–55, 250 N.W.2d 362 (1977). A precise methodology to be used by trial courts in determining whether a case is appropriately disposed of through summary judgment was set forth in *Marshall v. Miles*, 54 Wis.2d 155, 160–61, 194 N.W.2d 630 (1972):

"The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. [Case cited] However, the allegations of the pleadings may not be considered as evidence or other proof on a disposition of the motion. [Cases cited] Assuming a cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. [Case cited] If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. [Case cited] The summary-judgment procedure is not a trial on affidavits. [Case cited]"

This same methodology is used by this court to determine whether the trial court abused its discretion in either granting or denying the motion for summary judgment. *Ricchio v. Oberst*, 76 Wis.2d 545, 551, 251 N.W.2d 781 (1977).

The Village's motion for summary judgment was supported by the affidavits of the Village Clerk and the

affidavit of the Village Engineer and Public Works Superintendent. The affidavit of the Village Clerk set forth evidentiary facts which related to the procedure followed by the Village's Planning Commission and Trustees in approving the petition for rezoning, and also set forth the following facts relating to the physical characteristics of the proposed subdivision and surrounding area:

"6. That . . . the three parcels proposed to be rezoned in such subdivision lie immediately adjacent to Brook Grove Subdivision in the Village of Elm Grove, the entire area of which is zoned Multiple Dwelling District. . . .

"7. That . . . the only access to Marilyn Drive in such area is by way of North Avenue in the City of Brookfield; that by reason thereof, the Police and Fire Department must use this circuitous route to provide their services to this area; that at present, snow plowing service to such area is provided by the City of Brookfield under contract with the Village of Elm Grove."

Attached to this affidavit was a copy of the Zoning Ordinance Amendment here in question, in which the Village Board set forth the following findings as the basis of the rezoning:

"1. The proposed rezoning represents a responsible termination of the Multiple Dwelling Zoning in that particular area and no further change in zoning from this present approval should be granted in the future.

"2. The platting of this subdivision and its general layout is consistent with the official map of the Village as originally designed for the extension of Marilyn Drive to Woodview Subdivision to the east and the exit of this roadway onto Hawthorne Drive and the layout of this subdivision, including the proposed rezoning, is further consistent with the original concept of the development of this total area.

"3. This rezoning and platting represents a final rezoning and platting of the entire area lying between the subdivision to the west, all of which have been developed

as multiple dwelling area, and the subdivision to the east, which was platted and developed as a Single Family Unit Residential area.

"4.  The matter of drainage has been examined, both as to its character within the proposed subdivision and as to its effect upon adjoining areas, and that study shows that this drainage situation within the proposed subdivision is not a deterrent to the approval of its platting or its eventual development set out in the request for approval of the subdivision plat."

The amendment, which was to be effective immediately, set as conditions subsequent the completion of all roads and all improvements within six months, and the imposition, by deed restrictions, of architectural and landscaping controls.  Failure to meet these conditions was to activate an automatic repealer.

The affidavit of the Village Engineer and Public Works Superintendent sets forth facts which more fully describe the area in which the subdivision is located:

"That at the present time the northwest corner of the village, which is served by the street known as Marilyn Drive, is cut off from interior connection to other areas of the village by both of said undeveloped properties and that access to such extreme northwest corner of the village is only possible by way of North Avenue in the City of Brookfield and then re-entering the Elm Grove area in this vicinity."

This affidavit also sets forth the evidentiary fact that an agreement had existed between the village and the City of Brookfield under which Brookfield assumed the servicing, maintenance and snow plowing of Marilyn Drive in return for which the village rendered similar services to certain short lengths of streets in Brookfield. Furthermore, it sets forth the fact that the proposed layout of the Marilyn Drive extension complied with surface drainage requirements, and that a report to this effect was made to the Planning Commission.

On examining the moving party's affidavits and other proof, it must be determined whether a prima facie defense has been established. *Marshall v. Miles, supra* at 160. We think the evidentiary facts contained in these affidavits demonstrate that the community would benefit from the construction of the Marilyn Drive extension. Such extension would furnish direct, internal access to the extreme northwest portion of the village. While the benefit to the community derived from the act of rezoning is questionable, these facts demonstrate that the rezoning of these three parcels is not disharmonious to the original development concept of the area. The three parcels involved abut a multiple family district.

If the moving party has made a prima facie case for summary judgment, an examination must then be made of the opposing parties' affidavits to determine whether there exist disputed material facts, or competing inferences arising from undisputed facts. *Marshall v. Miles, supra* at 160–61.

The affidavits made by the plaintiff set forth the following evidentiary facts: (a) the village has had a comprehensive zoning ordinance covering the area in question since 1955, (b) the 1955 ordinance contains no provision authorizing rezoning on the basis of an offer by a property owner to construct a road in return for rezoning, (c) the official map of the village, adopted in 1956, contemplated the extension of Marilyn Drive, (d) the official map of 1956 reflects the original concept for the development of the area in question, (e) the defendants Moerwald and Gauger at no time presented facts or made claim demonstrating that denial of the requested rezoning would deprive them of all, or some, of the beneficial use of the property, (f) the defendants Moerwald and Gauger expressed at the hearing before the Board of Trustees their intent to sell the rezoned lots to investors

to defray the cost of subdividing, (g) the application for rezoning proposed the subdivision of the Moerwald-Gauger properties into sixteen lots, and the rezoning of three of those lots, (h) no presentation was made to the Board of Trustees by the defendants demonstrating that the requested zoning would promote adequate transportation or would improve fire and police protection to the area, and (i) the construction of multiple dwellings require fire and police protection for 12, rather than three, additional families.

These facts and inferences that can be drawn from them are not sufficient to prove the plaintiff's case, and the plaintiff has a strong presumption of validity to overcome.

■

A review of the plaintiff's supporting affidavit reveals that of the nine allegations made, six are admitted, two are immaterial and one refers to a matter of common knowledge. Therefore, we have no material factual disputes or any conflicting inferences arising from undisputed facts so as to entitle the plaintiff to a trial. We also note that by virtue of the respective petitions for summary judgment, both parties have represented to the court that there is no substantial issue of fact.

■

The plaintiff has alleged that the zoning amendment constituted "spot" zoning. Spot zoning is the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity in the same use district, and this court's position has long been that this type of rezoning is not illegal per se. *Rodgers v. Menomonee Falls*, 55 Wis.2d 563, 572, 201 N.W.2d 29 (1972); *Cushman v. Racine*, 39 Wis.2d 303, 306, 159 N.W.2d 67 (1968). It has been characterized both as a necessary device to provide flexibility to comprehensive zoning ordinances (2 Anderson, *American*

*Law of Zoning,* §9.17 at 129 (1976)) and as "the very antithesis of planned zoning" (1 Williams, *American Land Planning Law,* §27.01 at 561 (1974)). However, spot zoning is a form of rezoning and "should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning." *Buhler v. Racine County,* 33 Wis.2d 137, 150– 51, 146 N.W.2d 403 (1966) (CURRIE, C.J. Concurring) ; *Cushman v. Racine, supra* at 309.

However, under the facts and circumstances of this case the zoning amendment cannot be held to be illegal spot zoning. Here the three parcels at issue abut an area which is classified and totally developed as a multiple dwelling district. The rezoned parcels are close to a railroad right-of-way, and will front a street on which there are now only apartment buildings. This undeveloped property has isolated an area of the Village of Elm Grove from contact with the rest of the community and has prevented adequate police and fire protection to the owners of property there. This isolated area has also been denied other municipal services provided by the village. Under these circumstances, we think the rezoning was in the public interest and not solely for the benefit of the property owner. We find no merit to plaintiff's assertion that passage of the zoning amendment was the result of contract zoning.

A party who seeks to challenge a zoning ordinance must bear in mind that the ability of a court to act on such matters is limited. As this court stated in *Buhler v. Racine County, supra* at 146–47:

"We have held, and other jurisdictions have generally held, courts have power to grant relief against zoning when it is unconstitutional, unreasonable or discriminatory. Courts can determine whether a zoning ordinance

is a valid exercise of the police power, is within the limits of public necessity, and bears a substantial relationship to public purposes of health, safety or welfare. In some cases courts have reviewed zoning classifications to determine whether a classification of uses was fair and reasonable or arbitrary. [case cited] In other cases courts have inquired into the scheme of classification to see if it is applied fairly and impartially in a given case. [cases cited]

"However, since zoning is a legislative function, judicial review is limited and judicial interference restricted to cases of abuse of discretion, excess of power, or error of law. Consequently, although a court may differ with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization. This rule applies not only to the necessity and extent of zoning but also to rezoning, classification, establishment of districts, boundaries, uses, and to the determination of whether or not there has been such a change of conditions as to warrant rezoning."

These principles are applicable both in determining whether a defendant's motion for summary judgment should be granted and in determining whether the trial court's summary judgment decision was an abuse of discretion.

Because this rezoning amendment was in the public interest and as such a valid exercise of the police power, we conclude that the trial court was correct in granting defendants' motion for summary judgment. It follows the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.