Sally BALLENGER, et al., Plaintiffs-Appellants
and Cross-Respondents,

v.

DOOR COUNTY, Wisconsin; Door County Board
of Supervisors; Door County Planning
Department and Door County Zoning
Administrator, Defendants-Respondents,

WASHINGTON ISLAND FERRY LINE, INC.,
Defendant-Respondent and Cross-Appellant.†

Court of Appeals

*No. 85–0491. Submitted on briefs January 21, 1986.—
Decided April 8, 1986.*

(Also reported in 388 N.W.2d 624.)

† Petition to review denied.

423

For the appellants and cross-respondents there were briefs by *LaFollette & Sinykin* of Madison.

For the respondent and cross-appellant there were briefs by *Pinkert, Smith, Koehn, Weir & Jinkins, Roger Pinkert* and *Mark A. Jinkins* of Sturgeon Bay.

For the respondents there was a brief by *James C. Pankratz,* corporation counsel of Door County.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J. Sally Ballenger and others (Ballenger) appeal and Washington Island Ferry Line, Inc., cross-appeals a declaratory judgment validating a Door

County zoning ordinance amendment. Ballenger argues that the amendment constituted spot zoning and was invalid because it was not in the public interest, involved the participation of a county board supervisor with a conflict of interest, and was not passed by a sufficient number of the supervisors present. The Ferry Line argues that the trial court improperly denied its request for costs. Because we conclude that the zoning amendment did not constitute spot zoning and was properly acted on by the board, and that the trial court properly denied the Ferry Line its costs, we affirm.

On September 22, 1983, the Door County Board of Supervisors passed an ordinance allowing a ferry terminal as a permitted use in any area zoned C–2, resort commercial.[1] This amendment also added the definition:

> TERMINAL: Either end of a carrier line (as a shipping line) with classifying yards, dockage and lighterage facilities, management offices, storage sheds, freight and passenger stations, restaurant and enough parking to accommodate said terminal.

Under this ordinance, the Ferry Line could move its existing Gills Rock facility to a proposed Northport facility. The Northport facility has been zoned C–2 at all times relevant to this case. This zone is bordered by an area zoned R–1, single family residential.[2]

---

[1] The power to amend a zoning ordinance is found in § 59.97(5)(e), Stats., which provides in relevant part:

> The county board may amend the regulations of an ordinance or change the district boundaries. . . .

[2] The amendment of a zoning ordinance may be for the purpose of rezoning an area, changing the classifications of districts, shifting locations of district boundaries, reclassifying uses or, as in this

Zoning is a legislative function and, as a result, judicial interference is limited to cases involving an abuse of discretion, excess of power, or error of law. *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 580–81, 364 N.W.2d 149, 155–56 (1985) (quoting *Buhler v. Racine County,* 33 Wis. 2d 137, 146, 146 N.W.2d 403, 408 (1966)). We presume the ordinance to be valid and liberally construe it in favor of the municipality. *See Heaney v. City of Oshkosh,* 47 Wis. 2d 303, 307, 177 N.W.2d 74, 76 (1970) (quoting *Cushman v. City of Racine,* 39 Wis. 2d 303, 306, 159 N.W.2d 67, 69 (1968)).

We conclude that the ordinance was not an exercise of spot zoning. Spot zoning exists when a single parcel or area is granted privileges not extended to other land in the vicinity and in the same use district. *Howard v. Village of Elm Grove,* 80 Wis. 2d 33, 41, 257 N.W.2d 850, 854 (1977). Here, the ordinance allowed all C–2 zones to have a ferry terminal as a permitted use.[3]

Even if this ordinance could be construed as spot zoning, we still conclude that it is valid. Spot zoning is not per se illegal. *Heaney,* 47 Wis. 2d at 308, 177 N.W.2d at 77. It is a "necessary device to provide flexibility to comprehensive zoning ordinances" and should be allowed where "it is in the public interest and not

___

case, changing use restrictions. *See* 8 E. McQuillin, The Law of Municipal Corporations § 25.65 (3d ed. 1983). The amendment of zoning laws should be as closely scrutinized as the original legislation. *See id.* at § 25.06.

[3] The record indicates that there are more than 30 C–2 zones in Door County. At least six of those zones abut the Lake Michigan shoreline.

solely for the benefit of the property owner." *Howard,* 80 Wis. 2d at 42, 257 N.W.2d at 854.

When considering whether a zoning ordinance is in the public interest, we must determine if it is consistent with long-range planning and is based upon considerations affecting the whole community. *Heaney,* 47 Wis. 2d at 310, 177 N.W.2d at 77–78. The nature and character of the parcel, the use of the surrounding land, and the overall scheme or zoning plan are also relevant. *Id.* In addition, we must consider the public's health, morals and welfare. *See State ex rel. American Oil Co. v. Bessent,* 27 Wis. 2d 537, 544, 135 N.W.2d 317, 322 (1965).

Ordinarily, we would view a trial court's decision on the legality of a spot zoning ordinance as presenting a mixed question of fact and law. We will uphold the trial court's factual determinations unless they are clearly erroneous. *See* sec. 805.17(2), Stats. Whether the facts mandate the legal conclusion presents a question of law that we normally review *ab initio. See Ball v. District No. 4, Area Board of VTAE,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). Here, however, the legal conclusion is so intertwined with the factual findings that we will give weight to the trial court's decision. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

The trial court found that the Northport facility:

involves shorter trips for the travelling public to and from Washington Island; . . . is more protected and . . . [involves] less detours from scheduled landings . . . that there is less traffic, congestion out of Northport than out of Gills Rock; that . . . the Ferry Line . . . facilities . . . would provide rest-

rooms for the travelling public and . . . offer food and drink for the travelling public at Northport; that safety considerations are best served by utilization of the Northport facility.

These findings are supported by the record and are not clearly erroneous.

The trial court concluded that based on its findings, the construction of the Northport terminal would be in the public interest and would therefore be valid. Not every zoning enactment allowing an area situated in a larger zone to be devoted to a use inconsistent with the larger area use constitutes illegal spot zoning. *See Higbee v. Chicago, B. & Q. R.R.,* 235 Wis. 91, 98–99, 292 N.W. 320, 322–23 (1940). In determining the validity of this zoning ordinance, we recognize that each case must be determined on the facts. *See Eggebeen v. Sonnenburg,* 239 Wis. 213, 220, 1 N.W.2d 84, 87 (1941).

■ The trial court had a reasonable basis for its decision.[4] In *Higbee,* our supreme court deemed valid a zoning ordinance allowing the construction of a railroad passenger depot on a tract of land zoned residential. There, the common council passed an ordinance amending its zoning district and declaring the two-acre tract a public utility district. The court reasoned that the amendment was "in harmony with the general pur-

---

[4] Ballenger also argues that the trial court ignored the zoning change impact on the surrounding property owners. While the impact on neighboring property owners should be considered, property owners do not have a vested right to rely on existing zoning laws. *See Heaney,* 47 Wis. 2d at 309, 177 N.W.2d at 77; *Eggebeen,* 239 Wis. at 217–18, 1 N.W.2d at 86. After reviewing the record and the trial court's decision, we conclude that it properly considered the impact on the property owner.

pose of the [original] ordinance" because the original ordinance permitted the construction of buildings by public service corporations for the public convenience and welfare. *Higbee,* 235 Wis. at 98, 292 N.W. at 322. Consequently, the court concluded that the amendment did not constitute illegal spot zoning because the railroad depot would be devoted to public service and promote public welfare.

Likewise, this zoning ordinance permits the operation of a ferry terminal that will promote the public welfare in the ways found by the trial court and is consistent with the general purpose of the original ordinance. Both prior to and following the passage of this ordinance, the permitted uses in a C–2 zone included:

> Park, museum, historic site, town hall, community center, post office, or other public service facility owned and operated by a governmental agency.

A ferry terminal would have been a permitted use under this provision had it been owned and operated by a governmental agency. Once a situation is within the proper field for the exercise of a governmental entity's power through the enactment of zoning laws, the scope of the interference is a matter of legislative discretion. *See State ex rel. Carter v. Harper,* 182 Wis. 148, 161, 196 N.W. 451, 456 (1923). Consequently, the board of supervisors had the discretion to broaden the scope of the zoning ordinance and allow the operation of a ferry terminal by a privately owned enterprise.[5]

Next, Ballenger argues that the ordinance was not passed by a "majority of the supervisors present" at the September 22 meeting. *See* sec. 59.02(3), Stats. At this

---

[5] Likewise, the board had the discretion to include a restaurant as part of a ferry terminal.

meeting, ten supervisors voted for passage of the ordinance, nine supervisors voted against it, and one supervisor abstained from voting. Ballenger asserts that eleven votes were required to pass the ordinance because twenty supervisors were present at the meeting. We disagree.

The interpretation of a statute is a question of law, and we pay no deference to the trial court. *Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). Consequently, we will interpret sec. 59.02 *ab initio. Id.*

■
The requirement that an ordinance be passed by a majority of the supervisors present requires that a supervisor both attend the meeting and vote on the legislation before the supervisor can be deemed "present" within the meaning of sec. 59.02(3). *See, e.g., Board of Supervisors v. Hall,* 47 Wis. 208, 215, 2 N.W. 291, 296 (1879). In *Hall,* the court held that in order to determine whether a quorum of a board of supervisors is present, the number of board members who are physically present and legitimately vote on the legislation should be calculated. There, six members of a ten-member board were required to be "present" to constitute a quorum for the transaction of business. The court found that two of the seven members who attended and voted had a direct pecuniary interest that disqualified their votes. Consequently, the court concluded that the entire vote was void because only five board members were present and legitimately voted on the matter.

■
Here, twenty board members were physically present at the September 22 meeting. It is undisputed that

430

the supervisor who abstained from voting did so because he was a periodic employee of the Ferry Line and as a result had a direct pecuniary interest in the outcome. *See* Robert's Rule of Order Newly Revised § 44 (1981).[6] Had this supervisor voted on the ordinance, his vote would have been disqualified and, under *Hall*, only nineteen members of the twenty-member board would be deemed present for purposes of determining whether the quorum requirement was met. There is no logical reason to conclude that a disqualified member should be included for purposes of calculating a majority number required for passage of legislation. As a result, we hold that when a board member is required by law to abstain from voting, this member is not present for calculating the number of votes required for the passage of legislation. *See* Robert's Rule of Order, at § 43.[7]

---

[6] Although not mandatory authority regarding the interpretation of a Wisconsin statute, we note that Rule 33 of the Door County Rules of Order (DCRO) states that Robert's Rules of Order is to apply to situations not covered by the DCRO or the Wisconsin statutes. This section of Robert's Rules of Order Newly Revised provides in relevant part:

> No member should vote on a question in which he has a direct personal or pecuniary interest not common to other members of the organization. For example, if a motion proposes that the organization enter into a contract with a commercial firm of which a member of the organization is an officer and from which contract he would derive personal pecuniary profit, the member should abstain from voting on the motion.

[7] This section of Robert's Rules of Order Newly Revised provides in relevant part:

> [M]ajority vote . . . means more than half of the votes cast by persons legally entitled to vote, excluding blanks or abstentions, at a regular or properly called meeting at which a quorum . . . is present.

Ballenger also argues that the ordinance is invalid because it required three-fourths of the board to vote for passage. Ballenger bases this argument on sec. 59.97(5)(e)5, Stats., which provides that a three-fourths vote by the board is required for passage when a protest petition is submitted. A protest petition requires the signatures of fifty percent of the owners of the area affected by the amendment or by fifty percent of property owners abutting the area. It is undisputed that the Ballenger petitions were signed only by owners abutting the C–2 zone of the proposed Northport facility.

We conclude that the protest petitions were invalid because they were signed by less than fifty percent of the property owners abutting the C–2 zones affected by the ordinance. There are several C–2 zones in Door County. The statute states that the signatures of fifty percent of the property owners of all abutting land is required.[8]

Ballenger's final argument is that the ordinance is invalid because the supervisor with a conflict of interest directly participated in the presentation and debate. Because this supervisor abstained from the final vote, we interpret this argument to be that this conflict, which was revealed to the board prior to the final vote, somehow tainted the votes of those supervisors voting on the ordinance. We will not, however, review the motives or inducements of legislators when enacting legislation. *Peterson v. Natural Resources Board*, 94

---

[8] The parties also raise the issue whether § 59.97(5)(e)5 requires 50% of the abutting property owners' signatures of all C–2 zones or only the C–2 zones bordering the lake. Because of the facts of this case, however, we decline to address this issue. *See* note 3.

Wis. 2d 587, 599, 288 N.W.2d 845, 851 (1980); *see also Rosenberg v. Village of Whitefish Bay,* 199 Wis. 214, 218, 225 N.W. 838, 840 (1929).[9]

On cross-appeal, the Ferry Line argues that the trial court erroneously denied its request for costs. The Ferry Line asserts that ch. 814, Stats., mandates that they be awarded costs. Ballenger argues that the trial court has the discretion to award costs. Section 806.04, Stats., in relevant part provides:

> Uniform declaratory judgments act.
>
> . . . .
>
> (10) Costs. In any proceeding under this section the court may make such award of costs as may seem equitable and just.

When there are two statutes on the same subject matter, the more specific controls. *Schlosser v. Allis-Chalmers Corp.,* 65 Wis. 2d 153, 161, 222 N.W.2d 156, 160 (1974). We conclude that sec. 806.04 controls because it is specifically related to declaratory judgments. Consequently, the trial court has the discretion to award or deny costs. *See Kremers-Urban Co. v. American Employers Insurance Co.,* 119 Wis. 2d 722, 746, 351 N.W.2d 156, 168 (1984).

The trial court did not abuse its discretion when it denied the Ferry Line's request for costs. The trial court correctly recognized that while the Ferry Line was able to prove the ordinance valid, it was unable to show why the construction of the ferry terminal should be free from limitations. Recognizing that both parties

---

[9] *See also* 8A E. McQuillin, The Law of Municipal Corporations § 25.278 (3d ed. 1986); 5 *id.* at § 16.90 (3d ed. 1981).

had won and lost in part, the trial court properly declined to award costs.

*By the Court.*—Judgment affirmed.