Arnold L. LOULA, Plaintiff-Respondent-Cross-Appellant,

v.

SNAP-ON TOOLS CORPORATION, Defendant-Appellant-Cross-Respondent,

ALIAS INSURANCE COMPANY NO. 1, Defendant.

Court of Appeals

*No. 92-1518. Submitted on briefs December 14, 1992.—Decided March 2, 1993.*

(Also reported in 498 N.W.2d 866.)

For the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Michael A. Bowen* and *David Lucey* of *Foley & Lardner* of Milwaukee.

For plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *D.J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Snap-On Tools Corporation appeals a judgment awarding Arnold Loula damages in an intentional misrepresentation action. The jury found that Snap-On intentionally made four misrepresentations during Loula's recruitment process: (1) Loula would make as much money as doctors or lawyers; (2) Loula did not have to be a salesperson because the tools would sell themselves; (3) a Snap-On dealership is a no-risk proposition; and (4) Snap-On territories are all the same. We conclude that the four representations are merely expressions of puffery and are inactionable as a matter of law. Therefore, we reverse.

Before becoming a Snap-On dealer, Loula worked as a self-employed trucker. Loula became interested in the Snap-On business because he wanted to plan for his retirement and spend more time with his family. Loula and his wife, Rita, met a few times with Luther Scott, a Snap-On field manager, to discuss the possibility of a dealership with the company.

During these discussions, the Loulas expressed concern about Arnold's ability as a salesperson, and were told that "the tools sell themselves" and that a Snap-On dealership was a no-risk proposition. In addition, Arnold stated that he was told that successful dealers "make as much money as doctors and lawyers." However, Rita also testified that they were never told what the average net profits were for a dealership in either northern Wisconsin or anywhere in the state. The Loulas further claim that they were told that "all the territories were the same."[1] Apparently, Rita understood this to mean that the territories were approximately equal in terms of potential for sales.

As part of the recruitment process, Loula watched three dealers sell Snap-On products and then signed a dealership agreement and took over the Park Falls territory. As a Snap-On dealer, Loula became increasingly dissatisfied with the business and quit after about two years.

Loula then brought suit, alleging intentional misrepresentation. The jury found in his favor, awarding approximately $55,000 in compensatory and consequential damages and $56,000 in punitive damages. The trial court upheld the compensatory and consequential damages awards but eliminated punitive damages. Loula cross-appeals the denial of punitive damages. Because we conclude that the four representations are inactionable, we reverse and need not reach Loula's cross-appeal or the other issues raised by Snap-On.

The jury found that Snap-On intentionally made four representations: Loula would make as much money as doctors or lawyers, he did not have to be a salesperson

---

[1] Snap-on apparently divides a state into territories, and a dealer is then assigned to a particular territory.

because the tools sell themselves, a Snap-On dealership is a no-risk proposition and Snap-On territories are all the same. The elements of fraud require a false representation of fact made with intent to defraud and reliance by the injured party on the misrepresentation. *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131, 134 (Ct. App. 1982). The reliance must be justifiable. *Id.* Whether the facts mandate the legal conclusion presents a question of law that we review de novo. *Ballenger v. Door County*, 131 Wis. 2d 422, 427, 388 N.W.2d 624, 628 (Ct. App. 1986).

"Puffing" is an expression referring to an exaggeration made by a seller, the truth or falsity of which cannot be precisely determined, and is not actionable as a misrepresentation of fact. *State v. American TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 301-02, 430 N.W.2d 709, 712 (1988). Puffery is considered an expression of the seller's opinion, and, as such, the buyer has no right to rely upon such statements. Prosser and Keeton on The Law of Torts § 109 at 755 (5th ed. 1984). Statements of value, in general, as well as predictions as to profits to be made from the thing sold, fall into the same class of statements not to be relied on. *Id.*

The representation that Loula would make as much money as a doctor or a lawyer is so vague and indefinite that it amounts to nothing more than mere puffery, upon which Loula had no right to rely. *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*, 153 Wis. 2d 589, 594, 451 N.W.2d 456, 459 (Ct. App. 1989), held that the statement that a liquid clarifier would have a "long equipment life" was an example of puffing because there was no representation that the clarifier would last a minimum length of time. In *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986), the court reasoned

that General Foods' statements concerning the viability of the Burger Chef system to a potential franchisee was puffing because General Foods did not guarantee a particular degree of success and, in fact, "success" was a relative term.[2]

Here, Loula acknowledged that he was given no guarantees that he would make any particular or ascertainable income, and was never told what the average net profits were for a dealership in northern Wisconsin. Further, how much a doctor or lawyer makes varies enormously depending upon the location and nature of the practice.

In addition, Loula could not reasonably rely on the statements that the tools sell themselves or that Snap-On was a no-risk proposition. These statements are mere figures of speech expressing an opinion and, as such, are not statements of fact. In *Kelly Tire Service, Inc. v. Kelly-Springfield Tire Co.*, 338 F.2d 248, 253 (8th Cir. 1964), the plaintiff argued that the defendant's projections of anticipated sales, expenses and profits, coupled with the experience of defendant's organization, convinced him that the business venture was risk free. The court, in rejecting the argument, held:

> At best, these projections, however persuasive in shaping plaintiff's plans, were opinions subject to the

---

[2] General Foods made such statements as "[o]ur plans call for aggressive but controlled growth," *id.*, at 1406, that Burger Chef would overtake McDonalds and "opening a Burger Chef franchise is starting another outlet of a successfully established enterprise complete with the knowledge, research, and backing of the corporation and franchisees who have already made Burger Chef successful." *Id.* at 1407.

uncontrollable economic influences of free enterprise and not fraudulent misrepresentations of past or existing facts on which plaintiff justifiably relied to its detriment. *Id.*

Here, Loula even admitted that he did not entirely believe that the tools sell themselves and that there were risks associated in any kind of independent business.

■ Finally, the statement that all territories are the same is also inactionable. Rita testified that she knew that some areas were larger than others; that some territories were urban while others were rural.[3] Knowing that the territories differed in so many aspects, the Loulas could not reasonably rely on such a vague and imprecise representation. In summary, because all of the representations allegedly made by Snap-On amounted to nothing more than puffery and Loula could not, therefore, justifiably rely on them, we conclude that they are inactionable and reverse the judgment.

*By the Court.*—Judgment reversed.

CANE, P.J. (*dissenting*). The jury found that an employee of Snap-On made four intentional misrepresentations to Arnold Loula in order to persuade him to buy one of its dealerships. Snap-On told Loula during the recruitment process that (1) as a Snap-On dealer,

---

[3] Rita testified that she understood the representation to mean that all territories were more or less equal in terms of sales potential. However, under these circumstances, where there are numerous potential buyers in each territory, this statement is also unverifiable. Further, the record reveals that Loula's successor in his first year achieved a net economic benefit of approximately $89,000. Loula's successor testified that he "pocketed" $40,000, he increased his inventory by $35,000, and his increase in accounts receivable was $14,000.

Loula would make as much money as doctors and lawyers, (2) the dealer does not have to be a good salesman because the tools sell themselves, (3) all Snap-On territories are the same and (4) the dealership was a no-risk proposition. The majority concludes these representations were mere puffery and therefore not actionable. I disagree. I would also conclude that the trial court did not err by exercising its discretion to admit such evidence, and the evidence is sufficient to support the jury's verdict except for the punitive damages award. Therefore, I would affirm the trial court.

Essentially, Snap-On asserts that these statements constitute nonactionable opinions or representations about future events. Generally, in actions for fraudulent misrepresentations, the representations must relate to present or pre- existing fact. *Alropa Corp. v. Flatley,* 226 Wis. 561, 565-66, 277 N.W. 108, 110 (1938). Also, the general rule is that a prediction as to events to occur in the future is to be regarded as a statement of opinion only and the adverse party has no right to rely on such statements. *Hartwig v. Bitter,* 29 Wis. 2d 653, 657, 139 N.W.2d 644, 647 (1966). However, an exception to these general rules is that statements of opinion are actionable if the speaker knows of facts incompatible with the stated opinion. *Lundin v. Shimanski,* 124 Wis. 2d 175, 192, 368 N.W.2d 676, 684 (1985).

In *Lundin,* the supreme court concluded that the defendant's misrepresentations that there would be no problem in obtaining the necessary conditional use permits from the city were actionable. The court recognized that although the defendant's representations were statements of opinion concerning how the city would handle the permit application, which under the "pre-existing fact" rule would be nonactionable, there was sufficient evidence that the defendant knew of facts

incompatible with his opinion. It concluded that the Lundins had a right to rely on the defendant's assertions, and the claim was therefore actionable. *See also Zingale v. Mills Novelty Co.*, 244 Wis. 144, 149-50, 11 N.W.2d 644, 647 (1943), where the supreme court held that the defendant's misrepresentation that the small stockroom "would be an ideal location to manufacture ice cream" was actionable because the defendant knew at the time of the sale the room was objectionable.

In our case, there was evidence that at the time of these representations, the corporate employee knew they were untrue. Loula, as the plaintiffs in *Lundin* and *Zingale*, relied on these representations as they were important to him in making his decision to purchase the dealership. I would therefore conclude that these misrepresentations are actionable because the employee knew these representations were false and Loula had a right to rely on these assertions in making his business decision.

Next, I agree with the trial court that the jury's punitive damages award cannot be sustained. Here, the misrepresentations were committed by a corporate employee. To recover punitive damages from Snap-On, Loula must prove one of three things: (1) The corporation directed the employee to engage in the outrageous behavior, *Marlatt v. Western Union Telegraph Co.*, 167 Wis. 176, 179-80, 167 N.W. 263, 264-65 (1918), (2) the corporation ratified the employee's outrageous behavior after learning of the behavior, *id.* at 180, 167 N.W. at 265, or (3) considering the factors in *Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 228-29, 358 N.W.2d 816, 820 (Ct. App. 1984), the corporation was recklessly indifferent to, and took conscious action in deliberate disregard of Loula's rights. *Zeller v. Northrup King Co.*, 125 Wis. 2d 31, 35-36, 370 N.W.2d 809, 812-13 (Ct. App.

1985). Loula failed to present evidence that Snap-On would be liable under any of these theories, and the trial court correctly disallowed the award for punitive damages.