STATE of Wisconsin, Plaintiff,

DOOR COUNTY, Plaintiff-Respondent,

v.

LAND CONCEPTS, LTD., a domestic corporation,
Defendant-Appellant.†

Court of Appeals

*No. 92–1671. Oral argument March 29, 1993.—Decided May
4, 1993.*

(Also reported in 501 N.W.2d 817.)

†Petition to review denied.

On behalf of defendant-appellant, the cause was submitted on the brief of and orally argued by *William C. Yellin* of Wauwatosa.

On behalf of plaintiff-respondent, the cause was submitted on the brief of and orally argued by *Dennis D. Costello* of Sturgeon Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Land Concepts, Ltd. (LCL), appeals a summary judgment in favor of the State of Wisconsin and Door County that imposes various penalties for depositing fill upon designated shoreland without a permit in violation of a Door County Shoreland-Wetland Zoning Ordinance. LCL argues that sec. 30.11(4), Stats., authorizing riparian proprietors to place fill up to an established bulkhead (shore) line along navigable waters, preempts the county's attempt to restrict that activity. Alternatively, LCL maintains that its fill activities fall within the provision of the ordinance that exempts from permit requirements "the establishment of bulkhead lines," and therefore allows LCL to "establish" that line by fill from the bulkhead line landward to the ordinary high water mark. We reject LCL's arguments and affirm.

The DNR, on behalf of the state, did not appeal that part of the circuit court's summary judgment declaring that there exists a legally established bulkhead line determined according to sec. 30.11, Stats. A bulkhead line is a shoreline legislatively established by a municipality with state approval, distinguished from the existing shoreline and from the low and high water marks on the shore. *State v. McFarren*, 62 Wis. 2d 492, 498, 215 N.W.2d 459, 462 (1974); *see* also Legislative Council Notes—1959 to Wis. Stat. Ann. § 30.11 (West 1989). The parties reached a stipulation of facts upon which each side relied in seeking summary judgment on the issue of the validity of the bulkhead line.

This appeal presents the question whether the county may prohibit LCL as riparian owner from depositing fill upon the lake bed below the ordinary high water mark and up to the bulkhead line without a county permit. LCL acquired its shoreland in the town

of Nasewaupee in Door County in 1989, fronting on the navigable waters of Sawyer Harbor, part of Lake Michigan's Green Bay. Prior to this acquisition, the town, in cooperation with the DNR, the U.S. Army Corp of Engineers, and others had established a bulkhead line along much of the Sawyer Harbor coast. LCL then began filling its premises landward of the bulkhead line in 1990 without a county permit, intending to fill in excess of one and one-half acres with over 9,000 cubic yards of solid material, a substantial portion of which lies below the ordinary high water mark, and consists of wetlands. No fill, however, was placed waterward of the established bulkhead line. The circuit court granted the county's request for summary judgment enjoining further filling, imposing daily forfeitures and requiring return of the shoreline to its former condition.

## PREEMPTION

LCL first maintains that sec. 30.11(4), Stats., preempts the field of legislation governing fill along the shoreline, and bars any attempt by Door County to prevent the filling of its shorelands and wetlands in the designated area. Section 30.11(4) provides: "Riparian rights preserved. Establishment of a bulkhead line shall not abridge the riparian rights of riparian proprietors. Riparian proprietors may place solid structures or fill up to such line."

LCL cites no authority for its position and does not pursue the preemption issue other than to summarily propose it, relying instead primarily upon the exemption provisions of the county ordinance itself. However, because the question of the validity of a zoning ordinance in apparent conflict with sec. 30.11(4), Stats., is

of statewide importance and likely to arise again, we address the issue on its merits.

Where the legislature confers legislative powers upon municipalities, the municipality may exercise that power unless (1) there is express language elsewhere in the statutes restricting, revoking or withdrawing the power, (2) state legislation is logically inconsistent with the power of the municipality or (3) the ordinance infringes the spirit of a state law or general policy of the state. *Wisconsin Ass'n of Food Dealers v. Madison*, 97 Wis. 2d 426, 432–33, 293 N.W.2d 540, 544 (1980). We conclude that none of these limitations prevents the adoption of shoreland zoning over the use of the bed of Lake Michigan. We first note that the legislature has not only conferred broad legislative power upon counties in the area of shoreland zoning, it appears to require such zoning. Section 59.971(1m), Stats., provides in part: "To effect the purposes of s. 144.26 and to promote the public health, safety and general welfare, *each county shall zone by ordinance all shorelands* in its unincorporated area." (Emphasis added.)

Section 144.26, Stats., to which the preceding mandate refers, is entitled the "Navigable waters protection law," and includes in its provisions the definition of "shorelands" found in sec. 59.971, Stats. That definition includes as part of its terms the area within 1,000 feet of the ordinary high water mark of a lake. Section 144.26 also declares that its provisions are "To aid in the fulfillment of the state's role as trustee of its navigable waters repl. . . and authorize municipal shoreland zoning regulations for the efficient use, conservation, development and protection of this state's water resources." Section 144.26(2)(e) pro-

vides: " 'Regulation' means ordinance as enacted under ss. 59.971 . . . and refers to . . . zoning regulations which include control of uses of lands under, abutting or lying close to navigable waters . . . ."

We must concede that despite this authority, there is a surface plausibility to LCL's argument that the rights of riparian owners recognized in sec. 30.11(4), Stats., restrict and are logically inconsistent with the county's shoreland zoning ordinance. Nevertheless, viewed in the historical context of the law's development, it is beyond question that sec. 30.11(4) was not intended to render those rights fixed and immutable. *Town of Ashwaubenon v. PSC,* 22 Wis. 2d 38, 49, 125 N.W.2d 647, 653 (1963), expressly confirms this conclusion:

> The [riparians] do not challenge the paramount title of the state to the riverbed and concede that the legislature may, in the future, revoke the right of the riparian owners to retain structures up to the bulkhead line under sec. 30.11(4), Stats. 1959. It cannot be denied that the riparian owners have only a qualified title to the bed of the waters. The title of the state is paramount and the rights of others are subject to revocation at the pleasure of the legislature.

The enactment in 1965 of the Navigable Waters Protection Law, sec. 144.26, Stats., demonstrates the intent of the legislature to limit private riparian rights.

This exercise of the state's paramount authority is also consistent with the spirit and general policy of the public trust doctrine concerning Wisconsin's navigable waters and the beds underlying them. In the landmark decision *Muench v. PSC,* 261 Wis. 492, 53 N.W.2d 514 (1952), Justice Currie, after tracing the evolution of the public trust doctrine over our waters from the Revolu-

tionary War and the Northwest Ordinance of 1787, through the adoption of the Wisconsin Constitution at the Territorial Convention of 1848, noted:

> One of the clearest statements of the trust doctrine is found in Illinois Steel Co. v. Bilot, 1901, 109 Wis. 418, 426, 84 N.W. 855, 856, 85 N.W. 402, as follows:
>
>> "The United States never had title, in the Northwest Territory, out of which this state was carved, to the bed of lakes, ponds and navigable rivers, except in trust for public purposes; and its trust in that regard was transferred to the state, and must there continue forever, so far as necessary to the enjoyment thereof by the people of this commonwealth. Whatever concession the state may make without violating the essentials of the trust, it has been held, can properly be made to riparian proprietors."

*Id.* at 502, 53 N.W.2d at 517.

*Muench* establishes that any provision for private rights to fill lakebeds, as authorized in sec. 30.11(4), Stats., cannot and was not intended to extend to private landowners a right that the legislature cannot later modify or extinguish to further the public welfare. We therefore reject LCL's suggestion that the 1959 amendment to sec. 30.11 preempted the county's zoning power adopted pursuant to a subsequent legislative directive.

31

## ORDINANCE PROVISIONS

LCL next maintains that even if valid, the ordinance expressly exempts the use in question without the necessity of a permit. LCL points to sec. VI.D.8. of the ordinance, which provides:

> Uses Permitted Without Zoning Permits. Structures and activities below the Ordinary High Water Mark for which state and/or federal permits have been issued and which have minimal land use impacts such as the establishment of bulkhead lines; placement of sand blankets, fish cribs, shore protection (rip rap), stream fords, and private boat landings for the personal use of the riparian owner; waterfowl management practices; weed cutting; construction of small private wharfs or private piers for the personal use of the riparian owner; dredging and waterway enlargements; stream straightening, and placement of individual mooring buoys.

 LCL first suggests that the "permit" required by the preceding language is satisfied not only by a particular license to fill, but also includes the statutory "permission" to do so evinced by the language of sec. 30.11(4) Stats., itself, citing *McFarren*. LCL also suggests that "establishment of bulkhead lines" in the ordinance means the filling of the bed up to that line. LCL notes that all of the recited exempt activities in the ordinance relate to physical acts that involve physical use of the water bed. We agree that the exempted activities contemplate the physical uses. We do not agree, however, that the reference to establishing a line authorizes the fill of an entire area up from the ordinary high water mark up to the bulkhead line. Rather, we conclude that the establishment of a "line"

means the demarcation in a linear fashion along the legally established bulkhead line sufficient to allow it to be physically located, as in the establishment of boundary markers. This conclusion is not only consistent with the ordinance's reference to establishment of the line as "a minimal land use impact," it is also consistent with the demands of the public trust doctrine. Neither the county nor the state may irrevocably cede a significant portion of the bed of Lake Michigan to private use and control. We therefore affirm the summary judgment in favor of Door County.

*By the Court.*—Judgment affirmed.