COUNTY OF ADAMS, Plaintiff-Respondent,

v.

Irene ROMEO, and Matthew T. Romeo, Defendants-Appellants.†

Court of Appeals

*No. 93–0781. Submitted on briefs November 3, 1993.——Decided December 16, 1993.*

(Also reported in 510 N.W.2d 693.)

†Petition to review granted.

For the defendants-appellants the cause was submitted on the briefs of *Richard O. Wright* of *Richard O. Wright Law Offices, S.C.*, of Montello.

For the plaintiff-respondent the cause was submitted on the brief of *Michael J. McKenna, Adams County Corporation Counsel*, of Friendship.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Irene and Matthew Romeo appeal from a judgment imposing a forfeiture on them for violating the Adams County Shoreland Protection Ordinance and enjoining them from operating various commercial activities associated with a trout farm within the shoreland conservancy district.

The issue is whether the trial court erred in ruling that the ordinance prohibits the activities in question: operation of a public fish-for-a-fee business, retail sale of fish and other products, and use of a building to support the operation. We conclude that the court properly applied the ordinance to the Romeos and affirm the judgment.

█

There is an initial question as to the scope of our review of the trial court's decision. The county suggests in its brief that our review should be deferential. Citing *Ballenger v. Door County*, 131 Wis. 2d 422, 426, 388 N.W.2d 624, 627 (Ct. App. 1986), it states that we review such decisions for "abuse of discretion, excess of power, or error of law." While that standard generally applies to the review of zoning decisions, the Romeos argue that the trial court erred in interpreting the ordinance and applying its terms to the undisputed facts. We conclude that the question is thus one of law, which we decide independently. *Jackson County Iron Co. v.*

*Musolf*, 134 Wis. 2d 95, 100, 396 N.W.2d 323, 325 (1986).

Adams County adopted a shoreland protection ordinance in 1990, based on the following "Finding of Fact":

> Uncontrolled use of the Shorelands and pollution of the navigable waters of Adams County . . . adversely affects the public health, safety, convenience and general welfare, and impairs the tax base. The legislature of Wisconsin has delegated responsibilities to . . . counties to further the maintenance of safe and healthful conditions, prevent and control water pollution, protect[ ] . . . fish spawning grounds, fish and aquatic life, control building sites, placement of structures and land uses, preserving shore cover and natural beauty. . . .[1]

The Romeos' property is located in an area designated as a shoreland "conservancy district." The ordinance lists several land uses that are permitted in conservancy districts and specifically prohibits any uses not so listed. The question becomes, then, whether the activities determined by the trial court to have violated the ordinance — the Romeos' "operation of [a] retail commercial . . . trout farm" and "the sale [of fish] and maintenance of a fee fishing operation" — constitute permitted uses.

---

[1] *See also Just v. Marinette County*, 56 Wis. 2d 7, 23-24, 201 N.W.2d 761, 771 (1972), where the supreme court stated:

The shoreland zoning ordinance preserves nature, the environment, and natural resources as they were created and to which the people have a present right. The ordinance does not create or improve the public condition but only preserves nature from the despoilage and harm resulting from the unrestricted activities of humans. (Footnote omitted.)

The Romeos describe their operation as follows:

> Defendants['] . . . trout farm includes . . . ponds stocked with trout. For a fee, people fish in the ponds, and for the lucky ones who catch trout, defendants . . . clean the fish and sell the cleaned fish to the angler. A building [they] call a farm market is used for this purpose. It is 480 square feet. They also sell fish from the ponds from the building, which is used as a market for the fish.

The Romeos argue: (1) that theirs is an "agricultural" use of the property, which is permitted under the ordinance; and (2) that a provision allowing the construction of "nonresidential buildings used solely in conjunction with raising . . . minnows or other wetland or aquatic animals" should be interpreted as allowing them to engage in these endeavors.

As to the first assertion, sec. 8.31 of the ordinance states that "[t]he cultivation of agricultural crops" is a permitted use, and the Romeos argue that their activities come within this section because they are agricultural in nature. Adams County, Wis., Adams County Shoreland Protection Ordinance (June 27, 1990). The trial court did not hold, however, that the raising of fish, in and of itself, was not an agricultural pursuit permitted under the ordinance. Indeed, the judgment appealed from does not in any way prohibit the Romeos from engaging in fish farming; it bans only such activities in connection therewith that are best described as "retail" or "commercial" activities: inviting the general public to fish for a fee and selling fish and

certain other products to the general public on the property.[2]

We agree with the trial court and the county that these retail or commercial activities are not among the permitted uses set forth in the ordinance. And if they are not specifically permitted by the ordinance, they are prohibited in conservancy districts by the plain language of sec. 8.4: "Any use not listed in [the sections stating the permitted uses] is prohibited . . . ."[3]

The Romeos argue otherwise: they point to what they consider the "absurdity" of allowing the raising of fish, but prohibiting their retail sale, within the district. They assert, for example, that such a construction would prohibit farmers engaged in a permitted agricultural use of their land from maintaining a roadside stand for the sale of their produce. That precise issue is

---

[2] The trial court found that, in addition to selling fresh fish, whether caught by fee-paying anglers or not, the Romeos also sold smoked fish and jams.

[3] Section 9.41 of the ordinance states that any use "prohibited under Section 8.4 of this ordinance" is a prohibited use in a conservancy district. Section 8.4 states that "[a]ny use not listed in Sections 8.31, 8.32 or 8.33 is prohibited . . . ." Finally, secs. 8.31, 8.32 and 8.33 state the permitted land uses, and as we have indicated, the only provisions of those sections offered by the Romeos as authority for their use are those permitting the "cultivation of agricultural crops" and the maintenance of buildings used "in conjunction with raising of . . . aquatic animals . . . ."

We note with respect to the latter section that the use of such buildings is permitted only "upon the issuance of a zoning (land use) permit." Section 8.33. And while the Romeos have not indicated that they possess such a permit, the county does not argue the point and we infer that either one has been issued or none is required.

not before us, but even so, the choice of permitted land uses is for the legislative body — here the county board — and the wisdom of any given provision or restriction is for that body, not the courts, to assess. *Howard v. Village of Elm Grove*, 80 Wis. 2d 33, 42-43, 257 N.W.2d 850, 854-55 (1977).

The Romeos concede that "[a] general retail store, selling fish not raised at the location . . ., could be prohibited." But they contend that, "by raising the fish there, a permitted activity, [they should be] permitted to sell them there." Again, we disagree. We believe that the board could reasonably conclude that the cultivation of crops — or the raising of fish — may be one thing, but that their sale at retail in a conservancy district is quite another.

■

Nor are we persuaded by the Romeos' assertion that the provision allowing the construction and maintenance of nonresidential buildings "used solely in conjunction with raising . . . aquatic animals" permits the uses to which they have put their property: the ordinance expressly limits the use of such buildings to the "raising" of the fish; it does not say "raising *and selling*." We agree with the county that selling fish and other products from the building transforms the building's use from agricultural — or aquacultural — to commercial, and that such a use is not permitted by the plain language of the ordinance.

■

A municipality may legally restrict businesses or business activities to certain areas. 8 E. McQuillin, The Law of Municipal Corporations § 25.110 (3d ed. 1991). We have discussed the general purposes of the ordinance earlier in this opinion, and the Adams County Board has determined that one of the means of

189

achieving those purposes is through "[c]ontrol[ling] building sites, placement of structures and land uses" and prohibiting in their entirety certain uses considered to be "detrimental to the shoreland area." Section 1.32. In the Romeos' case, so long as their building meets other applicable zoning requirements and is used solely in conjunction with the raising of fish, they have committed no violation. However, to the extent the building is used in the retail sale of fish or any other products — or in the operation of a commercial fish-for-a-fee business — such use is prohibited under the ordinance.

Finally, the Romeos point out that they have a permit from the DNR to "plant, cultivate, nurture and harvest . . . fish for the purpose[ ] of selling the product for human consumption." They maintain that this permit overrides any restrictions in the ordinance because the DNR, by adopting minimum requirements for shoreland zoning, "is the author of the language for the permitted uses, and its interpretation of what is allowed controls what the local ordinances must permit in the shoreland-wetland districts."

As appears from the language just quoted, the permit does not in any way purport to authorize the Romeos to operate a commercial enterprise in the conservancy district for the purpose of selling their fish; it simply permits them to cultivate and harvest fish for the purpose of eventually selling them in the market — just as most traditional agricultural products are raised for ultimate sale and consumption. Even so, the Romeos have offered no authority for the proposition that a DNR fish farm permit can nullify or override a plainly worded restriction in a local zoning ordinance.[4]

---

[4] We reach a similar conclusion with respect to the Romeos' argument that the license they received from the DNR to oper-

Our independent examination of the question leads us to the same conclusion reached by the trial court: the ordinance permits the raising of fish within a conservancy district, but it prohibits using the land to operate a commercial fee-fishing business and selling fish or other products at retail on the property.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring*). I agree with the majority that the judgment of the trial court shall be affirmed. I write separately to disabuse the county of any idea that the trial court's judgment extends as far as the county would like. The county argues that fish farming is not a permitted use in the conservancy district of the county's shoreland protection ordinance. It also argues that if raising fish is a permitted use in the conservancy district, a person may not build an otherwise conforming building "which may be used to store the catch for eventual transportation to another location for eventual sale."

But these arguments by the county are not properly before us. The judgment provides:

> It is further ordered and adjudged that an injunction is hereby issued prohibiting the defendants from the operation of a retail commercial operation of a trout farm and from the sales of fish and fee fishing operation in its entirety, said injunction against such operations on the defendant's property . . . .

ate a public fishing ground overrides any contrary provision in the ordinance.

Pursuant to this injunction, all signage pertaining to the enjoined operation shall be removed by the Adams County Sheriff's Department . . . .

Thus, the trial court enjoined the "retail commercial operation" of a trout farm, but did not enjoin the Romeos from operating a fish farm. In fact, the trial court "applaud[ed], commend[ed] and encourag[ed]" Romeo and his mother for starting a small business. The court concluded that "it would appear that the raising of fish . . . would be a proper use and it would also appear that the building by the defendants on the premises would qualify."

We do not review that conclusion because it was not necessary to the court's decision. But the court further concluded that sales of fish or fish products, sales of jams, fishing for a fee, and signs advertising these commercial activities were not permitted uses. It is this conclusion that we review. I agree with the court's conclusion.

If fish farming is a permitted use in the conservancy district, and I conclude that it is, I see nothing in the law which prohibits the Romeos from using an otherwise conforming building to prepare fish for market. A dairy farmer frequently maintains a building separate from the barn to cool and keep his or her milk. An egg rancher may maintain a building separate from the chicken house to candle and package eggs. Of course these are commercial activities, but they are *agricultural* commercial activities. A rigid definition of "commercial" would exclude *all* agricultural activities, except growing crops and raising animals for personal consumption. That surely is not the intent of the county's ordinance or the Department of Natural Resources' rules.

192

I conclude that the commercial fish farm activities which are not permitted in the conservancy district are either those which are not agricultural—fishing for a fee, for example—or on-site sales to consumers of fish, fish products, or other products unrelated to fish farming.