COUNTY OF ADAMS, Plaintiff-Respondent,

v.

Irene ROMEO and Matthew T. Romeo, Defendants-
Appellants-Petitioners.

Supreme Court

*No. 93–0781. Oral argument October 11, 1994.—Decided
March 14, 1995.*

(Also reported in 528 N.W.2d 418.)

380

For the defendants-appellants-petitioners there were briefs by *Richard O. Wright* and *Richard O. Wright Law Offices, S.C.,* Montello and oral argument by *Richard O. Wright.*

For the plaintiff-respondent there was a brief by *Michael J. McKenna,* Adams County Corporation Counsel, Friendship and oral argument by *Michael J. McKenna.*

Amicus curiae was filed by *Robert W. Mulcahy, William F. White* and *Michael, Best & Friedrich,* Madison for the Wisconsin Counties Association and Wisconsin Towns Association.

Amicus curiae was filed by *Lorraine C. Stoltzfus,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general, for the Wisconsin Department of Natural Resources, Wisconsin Public Intervenor and Wisconsin's Environmental Decade, Inc.

STEINMETZ, J.    Irene and Matthew Romeo seek review of a decision of the court of appeals, which affirmed a decision of the circuit court for Adams county, the Honorable Duane H. Polivka, imposing a forfeiture on the Romeos for violating the Adams County Shoreland Protection Ordinance (ordinance)

and enjoining them from engaging in certain activities within an Adams county conservancy district.

There are two issues in this case. The first issue is whether the ordinance prohibits the Romeos from charging the public a fee to fish from ponds that are located on property within a conservancy district. Because the ordinance expressly permits fishing in a conservancy district, we hold that the Romeos may charge the public to fish from their ponds. The second issue is whether the ordinance prohibits the Romeos from using a non-residential building that is located on property within a conservancy district to sell fresh fish, smoked fish, and jams. Because the ordinance does not expressly permit the use of a building to sell these items, we hold that they may not be sold within a conservancy district. Accordingly, we reverse in part and affirm in part the decision of the court of appeals.

The Adams County Shoreland Protection Ordinance lists several land uses that are permitted in any area designated as a conservancy district. The Romeos own land that is located in a conservancy district. On this land, the Romeos raise fish and stock them in various ponds. For a fee, the public is permitted to fish from these ponds. Persons who catch fish can purchase them and have them cleaned. The cleaning takes place in a 480 square foot, nonresidential building that is located on the premises. This building is also used as a general fish market where the Romeos sell fresh fish, smoked fish, and jams. The Romeos have signs posted to advertise their business to the public.

Adams county issued citations to the Romeos for allegedly engaging in prohibited activities under the ordinance. Based on these citations, the county subsequently filed a complaint in circuit court seeking a judgment against the Romeos and seeking to enjoin

them from engaging in commercial activities associated with raising fish in a conservancy district. The circuit court ruled that the Romeos violated the statute by engaging in the following activities within a conservancy district: (1) running a fee-fishing business, (2) selling fresh fish, smoked fish, and jams from a building located on the premises, and (3) using signs to advertise such business operations. The court then ordered the Romeos to forfeit $393 and enjoined them from further engaging in any of the prohibited activities. The Romeos filed an appeal.

In a published opinion, the court of appeals affirmed the circuit court's decision. *County of Adams v. Romeo,* 181 Wis. 2d 183, 510 N.W.2d 693 (Ct. App. 1993). Distinguishing between commercial and noncommercial activities, the court of appeals held that the ordinance prohibits the operation of a commercial fee-fishing business and the retail sale of fish and other products from a building located on property within a conservancy district. *Id.* at 191. The court noted that under the ordinance, the Romeos may use their building solely in conjunction with the raising of fish. *Id.* at 189–90. However, according to the appellate court, selling fish and other products from the building transforms the building's use from agricultural to commercial, and to the extent that the building's use is commercial, its use is prohibited under the ordinance. *Id.* The Romeos petitioned this court for review, which was granted.

To resolve the two issues at bar, this court must interpret an ordinance and apply it to undisputed facts. The interpretation of an ordinance and its application to undisputed facts is a question of law, which this court decides without deference to the lower courts.

*Browndale International v. Board of Adjustment,* 60 Wis. 2d 182, 199, 208 N.W.2d 121, 130 (1973).

Adams county promulgated the Adams County Shoreland Protection Ordinance in 1990. The ordinance mirrors the language of Wis. Adm. Code ch. NR 115.[1] The general purpose of the ordinance is to "protect navigable waters and the public rights therein from the degradation and deterioration which results from uncontrolled use and development of shorelands." *See Just v. Marinette County,* 56 Wis. 2d 7, 10, 201 N.W.2d 761 (1972). The ordinance also states more specific purposes that apply to specific types of shoreland. *See, e.g.,* Adams County, WI, Ordinance secs. 1.3, 8.2, 9.2.

Section 9 of the ordinance regulates the use of land that is located within a conservancy district. Section 9.41 provides that property located within a conservancy district may not be put to any use that is prohibited under sec. 8.4 of the ordinance. Section 8.4 provides that "any use not listed in Sections 8.31, 8.32, or 8.33 is prohibited."

---

[1] Pursuant to sec. 144.26, Stats., the Department of Natural Resources (DNR) promulgated Wis. Adm. Code ch. NR 115, which requires counties to promulgate ordinances that protect shorelands by regulating their use. Chapter NR 115 also sets forth "reasonable minimum standards" that counties must follow in adopting these ordinances. Sec. NR 115.01(1). Although counties in this state have broad authority to zone shoreland area in a manner that is more restrictive than the minimum standards set forth by the DNR, *see State v. Land Concepts, Ltd.,* 177 Wis. 2d 24, 29, 501 N.W.2d 817 (Ct. App. 1993), the Adams County Ordinance adopts verbatim the restrictions set forth by the DNR.

With respect to the first issue, the Romeos argue that sec. 8.31 of the ordinance[2] expressly permits them to charge the public a fee to fish on their property. We agree. Section 8.31(1) provides that "fishing" is a permitted use of property within a conservancy district. Charging a fee does not alter the meaning of the word "fishing." Fishing is the capturing of fish, regardless of whether the angler pays a fee or fishes for free.[3]

The county urges this court to draw a distinction between commercial and noncommercial uses and then hold that the ordinance prohibits commercial uses. However, the ordinance does not make such a distinction. Nor has the county demonstrated that the commercial aspect of charging a fee creates a greater

---

[2] Section 8.3 provides in pertinent part:

*Permitted Uses.*   The following uses shall be allowed, subject to the general shoreland zoning regulations in this ordinance, the provisions of Sections 30 and 31 of the Wisconsin Statutes, and the provisions of other state and federal laws, if applicable:

8.31    Activities and uses which do not require the issuance of a zoning permit, but which must be carried out without filling, flooding, draining, dredging, ditching, tiling, or excavating:

1.    Hiking, fishing, trapping, hunting, swimming and boating;

. . .

5.    The cultivation of agricultural crops;

. . .

[3] "Fishing" is commonly defined as "the sport or business of catching fish." *Webster's Ninth New Collegiate Dictionary* (1987).

The licensing and regulation statute, sec. 29.01(3), Stats., defines "fishing" as "taking, capturing, killing, or fishing for fish of any variety in *any* manner. When the word 'fish' is used as a verb, it shall have the same meaning as the word 'fishing' as defined herein." (Emphasis added.)

risk of harm to land or water within a conservancy district. We therefore decline to engraft such a distinction on the ordinance. The relevant consideration is not whether the activity is commercial, but whether it is expressly permitted. Because the ordinance expressly permits fishing, the Romeos may charge the public a fee to fish on their property. Accordingly, we reverse the decision of the court of appeals insofar as it held that fishing for a fee is not a permitted use under the ordinance.

With respect to the second issue, the Romeos argue that secs. 8.31(5) and 8.33(2) of the ordinance expressly permit the use of a nonresidential building to sell fish and other related products. We disagree. Section 8.31(5) of the ordinance[4] provides that the "cultivation of agricultural crops" is a permitted use of property within a conservancy district. The Romeos contend that this language permits them to raise and sell fish. The premise of their argument is that raising fish is an agricultural use of property, which is permitted under sec. 8.31(5). However, agriculture and aquaculture entail two vastly different uses of property. Whereas the typical farmer must till the soil and fertilize the land, the fish farmer must work with bodies of water to enrich the environment for fish spawning. We recognize that the ordinance expressly seeks to protect fish spawning grounds. *See* Adams County, WI, Ordinance sec. 9.2. However, this only strengthens our conclusion that aquaculture and agriculture were not intended to be synonymous, because it shows that where the ordinance intended to speak to fish spawning, it did so specifically, not through some vague reference to agriculture.

---

[4] For the relevant text of the ordinance, see *supra* note 2.

Section 8.33(2) of the ordinance[5] provides that the maintenance of a nonresidential building "used solely in conjunction with raising . . . aquatic animals" is permitted. This language unequivocally permits the Romeos to use their building to assist in the raising of fish. The Romeos argue that they may also use the building as a general market to sell fresh fish, smoked fish, and jams because such activities are "in conjunction with raising . . . aquatic animals." This argument, however, ignores the ordinance's use of the words "solely" and "raising."

■

A fundamental rule of statutory interpretation is that, if possible, statutes are to be construed in a manner such that no word is rendered surplusage and every word is given effect. *Donaldson v. State,* 93 Wis. 2d 306, 286 N.W.2d 817 (1980). The rules governing the interpretation of ordinances and statutes are the same. *State v. Ozaukee Board of Adjustment,* 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989). Thus, if possible, this court must give effect to each word used in the ordinance, including the words "solely" and "raising."

---

[5] Section 8.33 provides in pertinent part:

Uses which are allowed upon the issuance of a zoning (land use) permitted: . . .

2.    The construction and maintenance of nonresidential buildings used solely in conjunction with raising of waterfowl, minnows or other wetland or aquatic animals or used solely for some other purpose which is compatible with wetland preservation, if such building cannot as a practical matter be located outside the wetland, provided that:

    A.    Any such building does not exceed five hundred (500) square feet in floor area; . . .

■ In the context of the ordinance, the word "raise" means to breed and promote the growth of fish. The word "solely" means exclusively or only. Thus, the ordinance permits certain buildings to be used only in a manner that assists in the breeding and growth of fish. Selling fish does not assist in the process of breeding fish. Although selling fish might be the purpose for raising fish, selling has nothing to do with the actual breeding process. The language of the ordinance does not provide that any activity which is in some way connected to raising fish is permitted, no matter how attenuated the connection. Instead, the ordinance uses the word "solely" to require the activity to have an extremely close connection to the raising of fish. Selling fish and raising fish are two entirely different activities that are remotely connected at best.[6] Likewise, cleaning fish and otherwise preparing them for market are activities that are only remotely connected to raising fish. Hence, we hold that cleaning fish and selling fish are activities that are not "solely in conjunction with raising" fish. Because neither selling fish nor cleaning fish is expressly permitted under the ordinance, these activities are prohibited. *See* Adams County, WI, Ordinance secs. 9.41, 8.4. Accordingly, the Romeos may not use their building to either clean fish or sell fish.

The Romeos argue that it is anomalous to allow them to use their building to raise fish but prohibit them from using it to sell the fish. They argue that such a holding would have the negative effect of prohibiting

---

[6] These two activities are even more remotely connected in the instant case. At trial, Mr. Romeo testified that the fish are initially raised at another location and then shipped to the conservancy district where they are stocked in ponds and fattened for sale.

388

farmers engaged in a permitted agricultural use of their land from maintaining a roadside stand to sell their produce. This argument is flawed because it erroneously assumes that sec. 8.31(5) of the ordinance, which permits the "cultivation of agricultural crops," applies in the same manner as sec. 8.33(2), which permits the use of a nonresidential building "solely in conjunction with the raising" of fish.

Section 8.31(5) and sec. 8.33(2) are totally different. First, sec. 8.31(5) applies only to those activities that do not require a zoning permit, whereas sec. 8.33(2) applies only to those activities that do require a zoning permit. We note that the parties have not briefed this court on whether a farmer would require a zoning permit to sell produce along the roadside. Second, sec. 8.31(5) does not contain any limiting language in regard to the cultivation of agricultural crops. In contrast, as previously discussed, sec. 8.33(2) contains language that limits the use of a building to only those activities that assist in the breeding and growth of aquatic animals. As a result of these differences between sec. 8.31(5) and 8.33(2), we are not persuaded that our holding will have the negative effect on farmers that the Romeos posit.[7]

---

[7] We also note that, as a general matter, farmers need not prepare or alter produce in any significant respect before selling it. In contrast, fish generally must be cleaned and wrapped before being sold to a customer. As previously discussed, the restrictive language of sec. 8.33(2) of the ordinance permits only those activities that assist in the breeding and growth of fish. Preparing fish for sale does not assist in their breeding or growth. Thus, even if both sections did apply in the same manner, which they clearly do not, one could reasonably conclude that farmers are permitted to sell their produce at a roadside

The Romeos admit that they use their building as a market to sell fresh fish, smoked fish, and jams. We have already concluded that the Romeos may not use the building to sell fish because the connection between raising fish and selling fish is too attenuated. There simply is no connection between raising fish and selling jams. Accordingly, the Romeos may not use their building to sell fresh fish, smoked fish, or jams.

In summary, we hold that the ordinance expressly permits the Romeos to charge the public a fee to fish from ponds within a conservancy district. We therefore reverse the court of appeals' holding that the Romeos may not operate a fee-fishing business, and we remand the case to the trial court with instructions to reduce the forfeiture entered against the Romeos by the amount imposed upon them for charging the public a fee to fish from ponds on their property. However, we affirm the court of appeals' holding that the Romeos may not use their building to sell fresh fish, smoked fish, or jams. The signs posted to advertise the Romeos' prohibited activities are to be removed since they are within the conservancy district.

*By the Court.*—The decision of the court of appeals is reversed in part, affirmed in part, and remanded.

SHIRLEY S. ABRAHAMSON, J. *(concurring and dissenting)*. Fishing as used in the ordinance must be interpreted to mean fishing as used in the statutes for purposes of licensing and regulation. The fee fishing in this case is not fishing for purposes of licensing and

---

stand, but persons raising fish are not permitted to sell them from a building located on land within a conservancy district.

regulation. No fishing license or trout stamp is required for this fee fishing. Fee fishing is not limited to particular times of the year. I therefore conclude that the fee fishing in this case is not fishing within the ordinance and dissent from that part of the opinion.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins this opinion.

WILLIAM A. BABLITCH, J. *(concurring and dissenting)*. I respectfully disagree with the majority's conclusion that commercial fee fishing in an artificially constructed pond is a permitted activity in a shoreland conservancy district.

At times, the syllogisms of legal analysis must bend to the spirit that emanates from within. This is one of those times. Simply put, this is not fishing.

Fishing is many things, the least of which to many who indulge is the catching of fish.

It is, in the winter doldrums, the casual browsing through the fishing catalogues, the fisherperson's equivalent of the gardener's seed catalogues, contemplating the coming renewal;

It is the snap of a twig across the lake on a dew filled morning signalling the approach of a deer taking the first sip of the dawn;

It is the desolate cry of a loon signalling its mate in a most haunting communion indecipherable to mere humans;

It is the screech of the owl ten feet above the river bend warning the invader of its displeasure as we approach at dusk to witness the fleetingly hypnotic hatch of the mayfly, ironically renewing itself at the moment of its demise;

It is the swish swish swish of the giant wings of the heron as it rises reluctantly from its shallow water

preserve, glaringly reminding us that this is its home, not ours.

It is all of this, and more, that brings us back again and again. *This* is fishing; the catching of a fish is merely ancillary.

And it is this, I submit, that the authors of the legislation establishing conservancy districts were referring to when they specifically enumerated "fishing" as a permitted activity. The statute speaks to this when it states as its purpose to "further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty." Section 144.26(1), Stats. (DNR promulgated Wis. Adm. Code ch. 115 pursuant to this statute).

An artificially constructed pond within yards of a natural waterway, 100 feet long, 30 feet wide, and 3 feet deep into which is put a corn or pellet baited hook with sufficient strength of line to water ski a polar bear is not fishing. Commercial fee fishing requires no license, carries with it no restrictions as to time, amount of equipment or other regulation. It simply is not fishing within the meaning contemplated.

I have no objection to this activity. But not within a conservancy district.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins in this opinion.